### THE W. I. RADCLIFFE.

### THE SYLVAN ARROW.

### WYNSTAY S. S. CO., LIMITED, et al. v. UNITED STATES.

District Court, S. D. New York.
March 13, 1934.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (J. H. Turnure, of New York City, of counsel), for libelants and S. S. W. I. Radcliffe.

Martin Conboy, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for respondent.

BYERS, District Judge.

On December 1, 1918, the British steamship W. I. Radcliffe was at anchor in the anchorage grounds off Tompkinsville, Staten Island, having arrived in the late afternoon of November 28th. She was light in ballast and was held in position by her port anchor on fifty fathoms of chain.

On November 29th, the Sylvan Arrow, in the possession and control of the United States of America, arrived from sea and came to anchor about a ship's length from the Radcliffe to the west; that is to say, nearer to the Staten Island shore; she was held in place by her port anchor on fifty fathoms of chain.

Both vessels remained in their respective positions throughout that and the following day, swinging clear in the tide, without incident. About 4 a. m. of December 1, 1918, the wind, which had been blowing out of the northwest, veered to west and increased in force; about 5:30 a. m., the velocity had reached over 50 miles an hour, again out of the northwest; at that time the tide was flood. As the vessels were headed, the tide and the wind were somewhat opposed, so that both ships pointed in a westerly direction. Anchor lights were displayed aboard both ships, and anchor watches maintained.

The Sylvan Arrow was also light and, because her forward tanks were being steamed, she was drawing 16 feet 6 inches aft and only 4 feet 6 inches forward. Between 5:30 and 5:40 a. m., the Sylvan Arrow began to drag her anchor and to drift down upon the Radcliffe broadside on; as soon as this was noticed on the latter vessel, efforts were made to pay out her own anchor chain, but this could not be accomplished before she was struck by the drifting vessel, which inflicted damage upon the Radcliffe's bow of a serious and substantial nature. The starboard side of the Sylvan Arrow, well aft, struck the Radcliffe with great force.

The depositions indicate clearly that the Radcliffe was without fault and that the Sylvan Arrow was to blame because her anchors were too light; this was known to her commanding officer because on previous occasions she had dragged her anchors, as stated by her officers in their testimony before the Naval Board of Investigation which met December 26, 1918.

The defense of inevitable accident, pleaded in the answer, has not been sustained.

In view of the known defect in equipment, it was clearly the duty of the commanding officer or the officer on watch from 4 to 8 a. m. on the Sylvan Arrow, to put out a second anchor when the wind increased in force so as to render her position one of possible hazard to the Radcliffe.

The respondent sought leave to amend its answer at the trial so as to include allegations of fault on the part of the Radcliffe which had not been pleaded. The motion was denied because it was thought the government was too late in seeking to change its theory of defense; even if the motion had been granted, the result would be the same, in view of the testimony.

The cause is pending by virtue of a special Act of Congress approved March 2, 1929 (45 Stat. 2351), which provides that the claim of the Wynstay Steamship Company, Limited, owner of the Radcliffe, against the United States for the damages caused by this collision may be determined in a suit to be brought in this court of admiralty, and that jurisdiction shall pertain to the court to hear and determine the suit and enter an appropriate decree as in like cases between private parties.

The government therefore has consented to be sued by the named corporation, "owner of the steamship Radcliffe."

It appears from the register of British ships in evidence that the Radcliffe was jointly owned by the first named libelant as to $^{33}\!/_{64}$ and by W. I. Radcliffe Steamship Company, Limited, as to $^{31}\!/_{64}$, and the point is made by the government that the enabling act extends only to the Wynstay Steamship Company Limited, as owner, and consequently recovery can be had only by that company to the extent of its ownership.

As the jurisdiction of the court must be measured by the enabling act, it is quite apparent that the court would be without authority to enter a decree in favor of the W. I. Radcliffe Steamship Company, Limited, or in favor of the Wynstay Steamship Company, Limited, on behalf of the former. This is a circumstance over which the court has no control, and consequently the decree must conform strictly to the enabling act, however clear it may be that Congress must have intended that the damages resulting from the collision in question should be assessed in one suit. This must be so, because, if a decree had been for the respondent, it would be clear that the court could not enter a judgment

against W. I. Radcliffe Steamship Company, Limited.

The Wynstay Steamship Company, Limited, may take the usual interlocutory decree, with costs, and its ultimate recovery will be limited to $33/64$ of the damages found.

Settle decree on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.